CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
March 28, 2025
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL ANTHONY DOBSON, ) | |
| ) | |
| Plaintiff, ) | Case No. 7:23-cv-00598 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| RICK WHITE, *et al.*, ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendants. ) | |

Plaintiff Michael Anthony Dobson, proceeding *pro se*, filed this civil rights action pursuant to 28 U.S.C. § 1983 against Defendants Rick White, K. Fleming, Michael Martin, D. Dotson, "Post Master," and Lt. Stanley. (*See* Compl. [ECF No. 1].) Defendants White, Fleming, Martin, Dotson, and Stanley (collectively, the "Moving Defendants") have jointly moved to dismiss Plaintiff's claims against them under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. (*See* Defs.' Mot. to Dismiss [ECF No. 23].) In response, Plaintiff has filed a "motion to deny motion to dismiss" (Pl.'s Mot. to Deny Mot. to Dismiss [ECF No. 40]) and a motion "to stay dismiss[al]" and "for summary judgment" (Pl.'s Mot. to Stay Dismiss and for Summ. J. [ECF No. 42]).

For the following reasons, the court will **GRANT** the Moving Defendants' motion to dismiss and **DENY** Plaintiff's motions asking the court to reject dismissal and/or for summary judgment.

I.

Plaintiff claims that Defendants violated his First and Fourth Amendment rights by interfering with his legal mail while he was incarcerated at Red Onion State Prison ("ROSP").

(*See* Compl. at 1–2; Particularized Compl. at 1–6 [ECF No. 1-1].) He bases his claims on the following allegations from Plaintiff's complaint, which the court liberally construes and accepts as true for the purposes of deciding the motion to dismiss. *See Shaw v. Foreman*, 59 F.4th 121, 127 (4th Cir. 2023).

Sometime in March 2023, Plaintiff asked Defendant Martin to procure a priority mail box and to prepare and send copies of legal documents to Dan Abrams at News Nation. (*See* Compl. at 2; Particularized Compl. ¶ 1; Attachments to Compl. at 2–3 [ECF No. 1-2].) Defendant Martin did not initially provide him with the priority mail box and Defendants instead "tried to force [him] to use a form of mailing which allow them to open the package without Plaintiff knowing." (Particularized Compl. ¶ 1; *see also* Attachments to Compl. at 2 (claiming Martin advised him to use certified mail rather than priority mail).) Plaintiff alleges that Defendants Martin and Fleming made these recommendations despite knowing that it was important to Plaintiff that any legal documents he sent would not be tampered with. (Particularized Compl. ¶ 1.) Specifically, Plaintiff alleges he made Martin and Fleming aware of prior incidents in which staff at Buckingham Correction Center had opened and removed "key emails" he sought to "use[] against them" and that this interference led him to be wary of tampering and insist that all future legal mail remained unopened. (*Id.* ¶¶ 1–2.)

On March 19, 2023, Plaintiff filed a written facility request and an informal complaint, explaining that he had requested but not been given a priority mail box. (*See* Attachments to Compl. at 2–3.) In his complaint, he stated he had waited two weeks for Defendant Martin to prepare the copies and procure a priority mail box. (*Id.* at 3; *see also* Particularized Compl. ¶ 1.)

Plaintiff now alleges that Martin intentionally delayed giving Plaintiff copies or mailing the documents after learning where Plaintiff intended to send them. (Particularized Compl. ¶ 1.) On March 21, 2023, Defendant Fleming responded to Plaintiff's facility request, informing him that the priority mail box had arrived and was waiting to be picked up in the mail room. (Attachments to Compl. at 2; *see also* Particularized Compl. ¶ 1.) At some point on March 21 or 23, 2023, Plaintiff received his copies and the priority mail box, and on March 22, 2023, nonparty K. Sykes responded to Plaintiff's informal complaint, stating, "Counselor Martin informed me that you received your copies and priority mail box." (Attachments to Compl. at 3–4; *see also* Particularized Compl. ¶¶ 3–4.)

When Plaintiff returned the box to Defendant Martin for mailing, he told Martin that he wanted the tracking number for the package. (Particularized Compl. ¶¶ 4–6.) Plaintiff had also emphasized his desire for tracking information in his facility request and informal complaint. (*Id.* ¶ 3; Attachments to Compl. at 2–3.) Yet after the priority mail box and copies were supposedly sent, Plaintiff never received a receipt or form with the tracking number. (*See* Compl. at 2; Particularized Compl. ¶ 3; *see also* Attachments to Compl. at 4.) Plaintiff alleges that Defendants and/or other mail room staff did not actually send his package and that, instead, "they opened the box and couldn't send it after opening due to safeguards." (Particularized Compl. ¶ 6.) He further alleges that the box was clearly marked "legal mail" and that his purpose in sending the documents to Mr. Abrams was to seek legal help and "the staff of D.O.C was not about to allow Plaintiff's story to get out." (*Id.*)

On April 4, 2023, Plaintiff filed another complaint with ROSP stating that he had mailed out a priority box, costing $17.10, and was not given a copy of the tracking information

or "U.S.P.S. form." (*See id.* ¶ 3; Attachments to Compl. at 9.) Defendant Dotson, a postal assistant, responded to Plaintiff's complaint the next day, informing him that his priority mail box was mailed on March 23, 2023, and that, though there was a number "placed on the box[,] . . . it was not a proper tracking #." (Attachments to Compl. at 9.) Dotson apologized for the inconvenience and told Plaintiff this issue "has been addressed with mailroom staff to ensure a situation such as this does not happen again." (*Id.*)

Plaintiff continued to correspond with Defendants Fleming and Dotson about the tracking issue. (*See* Particularized Compl. at 4.) In their correspondence, Fleming told Plaintiff that the post office did not give Fleming any receipt when the package was mailed. (*Id.*; Attachments to Compl. at 4–6.) And through his correspondence with Dotson, Plaintiff requested and received an address at which to mail a complaint against the U.S. Postal Service generally. (*See* Particularized Compl. at 4; *see also* Attachments to Compl. at 13.) But the Post Master never responded to Plaintiff's letter. (*See* Particularized Compl. at 5 (explaining that the lack of response is the basis for Plaintiff's claim against the Post Master).)

Plaintiff ultimately filed a formal grievance against Dotson concerning the issue, and Defendant White determined Plaintiff's grievance was "founded" and told Plaintiff that he could resend the documents and package at the State's expense. (*See* Attachments to Compl. at 17.) Plaintiff nevertheless claims that White "refused to investigate what happened to the priority box" and that his response was "undermining and not resolvable." (Particularized Compl. at 5.) Plaintiff also claims that Defendant Stanley is "the head of 'intel' and is over the mailroom" but that, although Plaintiff asked in his informal complaint for "proof and a[n] investigation," Stanley simply "handed the complaint off to D. Dotson." (*Id.*)

- 4 -

Based on these allegations, Plaintiff asks the court to award him $25,000 in damages and to order an investigation into what happened to the package he mailed. (Compl. at 2.)

## II.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be "plausible," a plaintiff's claim must be supported by factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although this "plausibility" standard is not akin to "probability," it does require "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citations omitted). Additionally, the court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (citations omitted). And, because

Plaintiff is proceeding *pro se*, the allegations are construed "liberally" in his favor. *Shaw*, 59 F.4th at 127. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief" as required by Rule 8. *Iqbal*, 556 U.S. at 679 (cleaned up).

### III.

Plaintiff purports to bring his claims under 42 U.S.C. § 1983, which authorizes a civil action by a citizen who is deprived of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. To state a claim under § 1983, a plaintiff must allege both (1) "the violation of a right secured by the Constitution and laws of the United States" and (2) "that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)).

"Interference with an inmate's mail *may* state a cognizable claim under § 1983." *Dickerson v. Glob. Tel Link Corp.*, No. 7:23-CV-00082, 2023 WL 3026735, at *2 (W.D. Va. Apr. 20, 2023) (emphasis in original). But the facts alleged in Plaintiff's complaint—whether rooted in Defendants' failure to provide him with the requested tracking information, opening his package, or failing to send the package—do not rise to the level of a constitutional violation.

To the extent Plaintiff's claims concern the failure to provide him with a tracking number and/or receipt rather than the failure to send his mail, Plaintiff has not stated a plausible § 1983 claim against any of the Moving Defendants. Although the First Amendment generally entitles prisoners to send and receive mail, subject to justified intrusions, *see Thornburgh v. Abbott*, 490 U.S. 401, 407–08 (1989), there is no authority for extending that right

to include an entitlement to tracking information or other written confirmation that mail has been delivered. *Cf. Carter-El v. Oakley*, No. CV JFM-14-2545, 2015 WL 7012708, at *8 (D. Md. Nov. 10, 2015), *aff'd,* 668 F. App'x 474 (4th Cir. 2016) (holding that "[f]ailure to provide plaintiff with the certified receipts [for his legal mail], without more," did not constitute a denial of the plaintiff's constitutional right to meaningful access to the courts).

In the prison-mail context, the First Amendment is concerned with protecting prisoners' right to speak free from unreasonable interference by prison staff that does not further legitimate penological purposes. *See Matherly v. Andrews*, 859 F.3d 264, 280–81 (4th Cir. 2017); *Altizer v. Deeds*, 191 F.3d 540, 547–48 (4th Cir. 1999). That right is not hindered simply because a prisoner is not provided with tracking information or proof of delivery. Indeed, holding that state prison officials must always provide tracking information when requested would constitute a significant, unwarranted expansion of constitutional rights and impose a substantial, impractical burden on prison staff and administrators nationwide. *See Thornburgh*, 490 U.S. at 407 (explaining that the First Amendment rights of prisoners "must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration.") (quoting *Turner v. Safley*, 482 U.S. 78, 85 (1987)). Accordingly, the court will dismiss any claims based on Defendants' failure to provide Plaintiff with a tracking number.

To the extent Plaintiff's claims are instead based on the wrongful opening of or failure to send his outgoing mail, he has still failed to state a viable constitutional claim. Even construing the allegations in the light most favorable to Plaintiff, his claims are based on only a single instance of interference with his mail by Defendants. Courts in this Circuit have repeatedly found that isolated incidents where mail is wrongfully opened or lost do not create

constitutional liability. *See, e.g.*, *Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983) ("The plaintiff's claim that his mail was opened without his presence in violation of his First and Fourteenth Amendment rights involves a few isolated instances of plaintiff's mail being opened out of his presence" which "appear to have been either accidental or the result of unauthorized subordinate conduct and were not of constitutional magnitude."); *Jackson v. Wade*, No. 1:20CV114 (LMB/IDD), 2021 WL 1536578, at *3 (E.D. Va. Apr. 19, 2021) ("[E]ven assuming that plaintiff was denied his regular mail on the four occasions . . ., such denials would not constitute a violation of his rights under the First Amendment because isolated or inadvertent incidents of lost mail, mail tampering, or the mishandling of mail are not actionable under § 1983.") (citations omitted); *Conner v. Henry Cnty. Sheriff's Off.*, No. 7:23-CV-00061, 2023 WL 3026740, at *3 (W.D. Va. Apr. 20, 2023) ("[C]ourts uniformly recognize that a relatively isolated or short-term disruption of a prisoner's receipt of his mail, legal or otherwise, does not rise to the level of a constitutional deprivation."); *see also Booker v. Merch.*, No. 2:22-CV-02179-JDA-MGB, 2024 WL 4111103, at *6 (D.S.C. July 1, 2024), *report and recommendation adopted,* No. 2:22-CV-02179-JDA, 2025 WL 99773 (D.S.C. Jan. 15, 2025) (collecting Fourth Circuit cases showing that isolated incidents of mail mishandling do not constitute constitutional violations). Because Plaintiff's allegations concern only a single incident of the mishandling of his mail, they do not rise to the level of a constitutional violation.

Because Plaintiff cannot show that he suffered any constitutional violation as a result of the alleged interference with his mail, he cannot succeed on a § 1983 claim against any Moving Defendant.

## IV.

For these reasons, the court will **GRANT** the Moving Defendants' motion to dismiss (ECF No. 23) and **DISMISS** Plaintiff's claims against them. The court will also **DENY** Plaintiff's motion to deny the motion to dismiss (ECF No. 40) and Plaintiff's motion to stay dismissal and for summary judgment (ECF No. 42).

Additionally, pursuant to 28 U.S.C. § 1915(e)(2), the court will dismiss Plaintiff's remaining claim against the Post Master for failure to state a claim for which relief can be granted. *See* 28 U.S.C. § 1915(e)(2) (directing the court to dismiss a case in which it has authorized the commencement of a suit without the prepayment of fees "at any time if the court determines that . . . the action . . . is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief"). For all the same reasons set forth above, and because Plaintiff has not sufficiently alleged the Post Master's personal involvement in any of the actions underlying his claims, Plaintiff's complaint fails to state a claim for relief against the Post Master, too.

The Clerk is direct to send copies of this memorandum opinion and the accompanying order to the parties.

**ENTERED** this 28th day of March, 2025.

>  */s/ Thomas T. Cullen*
> HON. THOMAS T. CULLEN
> UNITED STATES DISTRICT JUDGE